## Elgin, Joliet & Eastern Railway Company v. John R. Herath, Administrator.

### Gen. No. 4,660.

1. SAFE PLACE TO WORK—*duty of master to furnish.* It is the duty of a master to furnish to his servant a reasonably safe place in which to perform his work, and such servant in performing his work has a right to rely upon the belief that the master has furnished such a place.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Will county; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed November 9, 1906.

J. L. O'DONNELL and T. F. DONOVAN, for appellant; KNAPP, HAYNIE & CAMPBELL, of counsel.

BARR, BARR & BARR, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This is an action brought by John R. Herath, administrator of the estate of Thomas Menary, against appellant, claiming damages for negligently causing the death of Menary. The case was tried in the Circuit Court of Will county. The jury found the defendant guilty, and assessed the plaintiff's damages at the sum of $8,000. On the hearing of the motion for a new trial, the lower court required the plaintiff to remit $1,000 of this verdict. The plaintiff having consented to a *remittitur* of that amount, the court entered judgment against the defendant for $7,000. From that judgment the defendant has appealed, and the cause is brought to this court for review.

Thomas Menary was one of a gang or group of four men, who were employed as car repairers in the yards of the Elgin, Joliet & Eastern Railway Company at Joliet. The accident which caused his death took place

in those yards on the 21st of July, 1904. On that morning this gang of four men was ordered by the general foreman of the yards, Charles H. Emerson, to go to a track called the wire mill track, which was used as a switch track, to dismantle a box car that stood upon that track, and place the material on a flat car standing near it on the same track. The men proceeded at once with this work. They raised the end of the box car next to the flat car several feet by means of jack screws, and Menary was at work beneath the box car and next to the flat car facing the box car when an engine with coal cars attached backed down upon the switch track from the main track, struck the flat car and drove it against the box car. Menary was caught between the two cars and received injuries from which he soon afterwards died.

It is contended by appellant that Menary held the position or office of foreman of the gang or group of men with whom he was working on the car in question; that, as such foreman, he was clothed with a degree of responsibility that did not attach to an ordinary workman; and that it was, therefore, his duty to protect himself and the other members of his gang by placing on the track at a proper distance from the place where they were working a flag as a warning signal to approaching engines or trains. This contention is urged with great force by counsel for appellant. It does not, however, appear to us that the evidence, when carefully and impartially considered, bears out this claim. One Louis Johnson was the principal witness for the plaintiff. Johnson was one of the gang of four men that Menary was working with. The other two members of the gang were Swedes who could not talk English. Johnson testified that he had worked with Menary during all the time that the latter had been in the employ of appellant; that they had never worked on the wire mill track but once before the morning

of the accident; that Emerson was the foreman to whom they looked for orders; that Emerson came to this gang, which was working on another track, on that morning, took the four men to the wire mill track and told them to strip or dismantle the box car and load the materials on the flat car. He further testified that during all the time that he and Menary were engaged together on this repair work they had never used a flag as a warning signal, and that he (Johnson) had never received or heard an order to have a flag on the repair track, and that there was no rule of the company to that effect till after Menary's death. It was also brought out in Johnson's evidence that after the gang had gone over to the wire mill track on the morning of the accident, he asked Menary if they had better not have a flag out, and that Menary said no, that as there was an open space between them and the end of the switch track, they could look out for themselves; and he testified that the idea of a signal flag was suggested in his mind by his experience on the Chicago & Northwestern Railway, upon which he had formerly worked. Great effort was made and much ingenuity was exercised by counsel for appellant to induce Johnson to testify that Menary was the foreman of the gang with which he was working; but we do not think that the effort was in any degree successful. Johnson said that Emerson generally gave orders about the work, sometimes to himself and sometimes to Menary; and he explicitly denied that Menary was the foreman of the gang.

Charles H. Emerson, the general foreman of the yards at Joliet, was the principal witness for appellant. His evidence was to the effect that Menary was the foreman of his gang. He testified that on the morning of the accident he did not tell Menary to put out a flag, but that he had on several previous occasions given him such direction, and that he had "never caught Menary when he didn't have flags up." It is

to be noted, however, that although Emerson testified that he had given such orders, not only to Menary, but to the foreman of similar gangs, yet he was able to name only one person aside from Menary whom he had so directed. That man, one Jacob Frobish, was afterwards called by the plaintiff as a witness in rebuttal, and denied having received such orders from Emerson. The testimony of Frobish was objected to, but it was rendered competent by the testimony given by Emerson. The defendant drew forth this evidence in regard to Emerson's orders about putting out flags, and the plaintiff had the right to meet it by producing rebuttal testimony.

It is not possible to reconcile the testimony of the witnesses Johnson and Emerson; but it seems fair to conclude from all the facts and circumstances in evidence, that it never was the purpose of appellant to clothe Menary with any of the real powers or attributes that common experience associates with the position of foreman of a gang of workmen. He had neither power to employ nor authority to discharge men; he did not plan the work on which he was engaged, nor did he direct the movements of the other men in the gang; it does not appear in the evidence that he received higher pay than other workmen of the same class. The fact that a servant transmits to fellow-servants orders received from a common superior in nowise constituted him the agent of that superior, nor does it make him a foreman in the common and usual acceptation of that term. This seems to have been the view taken by the jury. They had the witnesses before them; they knew the respective interests of those witnesses in the case on trial; and it was their province to give such credence as they saw fit to the testimony of each witness. If this view be correct—and it is a reasonable view when all the facts and circumstances in the case are considered—then Menary had the right

to rely on his superior to furnish him a reasonably safe place in which to work; and when that superior had set him at work in that place, he had the further right to rely with confidence on being protected there, and he should not have been obliged to perform the work assigned him and at the same time be on the look-out for danger arising from the reckless or negligent operation of trains or engines coming from the main track to the switch track. The deceased should not be held to a stricter accountability or required to carry a greater responsibility, than his fellow-workmen of the same class. We think, therefore, that the jury's verdict of guilty against the defendant was justified.

It is claimed by the appellant that there is a variance between the pleadings and the proof, in this, that the declaration charges the appellant with negligence in pushing the cars onto the wire mill track and against the car on which Menary was at work, and that the proof, if it showed negligence at all, was in not having a flag placed so as to warn approaching cars or engines. This position is untenable for the reason that the negligence consisted not in the failure to place a flag as a danger signal, but in pushing cars against the car underneath which Menary was at work. The failure to use a flag was brought out by appellant, and the appellee had the right to meet this evidence introduced by the appellant.

It is assigned for error that the verdict is excessive, but that point is not argued, and it is therefore waived. We find no substantial error in the record. The judgment is, therefore, affirmed.

*Affirmed.*