## John H. Herath, Administrator, Appellee, v. Elgin, Joliet & Eastern Railway Company, Appellant.

### Gen. No. 5,065.

1. ORDINARY CARE—*when evidence does not tend to establish exercise of. Held*, that the evidence in this case did not fairly tend to prove that the plaintiff's intestate, who was a car repairer, was at the time of the occasion in question in the exercise of ordinary care for his own safety.

2. CONTRIBUTORY NEGLIGENCE—*effect upon right of recovery*. Contributory negligence bars the right of recovery notwithstanding negligence upon the part of the defendant may likewise have contributed to the accident in question.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the October term, 1908. Reversed. Opinion filed March 24, 1909.

J. L. O'DONNELL and T. F. DONOVAN, for appellant; KNAPP, HAYNIE & CAMPBELL, of counsel.

BARR, BARR & BARR, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This is an action on the case brought by appellee, as administrator of the estate of Thomas H. Menary, deceased, to recover from appellant, the Elgin, Joliet and Eastern Railway Company, damages resulting to the widow of said Menary from his death while in the employ of appellant as car repairer in its yards at East Joliet. The declaration upon which the case was tried contained three counts. They all made the same charges. They alleged that Menary was employed by appellant in the work of repairing cars; that on July 21, 1904, he was repairing a car on a track in appellant's yards, which in one count was called the "wire mill track" and in other counts a "switch track"; that he was in the exercise of due

care for his own safety, and that appellant negligently pushed other cars upon the track against the car on which he was at work and injured him so that he died. The plea was not guilty and there was a verdict for $8,000. A *remittitur* of $1,000 was entered and the judgment given for $7,000 and this court affirmed that judgment. E. J. & E. Ry. Co. v. Herath, 129 Ill. App. 416. Afterwards the Supreme Court reversed such judgment and remanded the cause on the ground that "there was an utter lack of evidence to prove the averment that Menary was in the exercise of due care and caution, but that the evidence affirmatively proved the want of any care." E. J. & E. Ry. Co. v. Herath, 230 Ill. 117. After remandment there was another trial and a verdict and judgment for appellee for $6,000. A motion for a new trial was denied. Judgment was entered on the verdict and this appeal taken by the company.

At the close of all the proof, appellant moved the court to exclude the evidence and instruct the jury to return a verdict of not guilty. The motion was denied and the instruction refused. From the view we take of the evidence, the error assigned on the refusal of the court to direct a verdict is the only one we deem necessary to consider in determining the merits of the judgment.

To entitle appellee to a verdict, it was necessary for him to prove: First, that appellant was guilty of the negligence charged in some count of the declaration, and second, that Menary was in the exercise of due care for his own safety when killed.

On the question of whether appellant was guilty of the negligence charged, the evidence is undisputed that on July 21, 1904, Thomas H. Menary had been in the employ of appellant as a car repairer in its yards in East Joliet six months. There were about two hundred and fifty men employed in the yards, divided into gangs of four. Charles H. Emerson was appellant's master car builder and general car foreman at its yards

north of Jackson street in East Joliet. Menary, Louis Johnson, John Peterson and Aaron Carlson constituted one of these gangs. Menary and Carlson were carpenters, Johnson and Peterson were helpers. Emerson directed Menary where to work and what to do, and Menary directed the other men who were required to work as they told them. Menary was furnished with a book, and when a car was finished he checked the car and turned the book into the office. Emerson and Carlson testified that Menary also kept the time of the men, but Johnson testified that each man kept his own time. Menary had been acting in this capacity about three months before his death. Appellant had in its repair yards, a number of tracks for repairing cars. Two of such tracks were used in the general overhauling of cars or repairing cars that required sills. These were called "sill tracks" and there was another track for light repairs. There was also a track that was called the "wire mill track." Cars were not put in on the sill tracks except at night. On the repair tracks, the rule was, if a switch engine came in with cars, a man walked down ahead of the cars to see that nobody was working there. The cars were not allowed to go in and touch one another. When a car was brought in in bad order, the men were required to "spot the car" as it was called, so as not to rub against another car. The track where the accident occurred was known as the "wire mill track" and was about three blocks from the repair tracks and the above rule did not apply to it. It was used for the storage of cars, and cars that were in bad order were put in there at any time in the usual way, sometimes every day and at other times once in two or three days. On the morning of the accident, about 8 o'clock, Menary, Peterson, Johnson and Carlson were working together at the north end of the east sill track, when Emerson came to them and told them to come over with him to the wire mill track, that he had something there for them to do. Emerson went with them over the tracks and

pointed out a box car and told Menary or the gang to
strip that car down and load it on a flat car.   Menary
and the other men of his gang went over to the wire
mill track and Emerson went back to the repair tracks.
There was a flat car standing about four feet from the
box car towards the switch connection with the other
tracks, and no sign or signal was put up to indicate
that the men were about the box car, and no provision
was made for keeping watch for engines or cars.
Menary, Johnson, Peterson and Carlson went to work
dismantling the car and loading it on the flat car.   Pe-
terson was with Menary at the end next the flat car
and Carlson was with Johnson at the other end.   They
had the coupler down and the bolster off and had taken
out some parts underneath and Johnson and Carlson
were taking out the brake beam.   The end of the car
where Menary and Peterson were at work had been
jacked up, and Johnson came around the car and spoke
to Menary about a jack.   Johnson stooped over, and
when he straightened up he noticed the flat car moving
slowly, being pushed by coal cars being switched in.
The first coal car struck the flat car and pushed it
against the box car, causing Menary's death.   There
was evidence on the part of appellee that there was
no signal, by bell or whistle or otherwise, of the ap-
proach of the engine with cars that were being pushed
in, and there was no one on the first car which was
being pushed down towards where Menary was work-
ing.   There is no statutory requirement that a bell
shall be rung or whistle sounded in doing switching
work in railroad yards, unless in approaching a street
or highway.   There was some evidence in this record
of a custom to have brakemen ride on the cars when
they were switched in, but when the coal cars were set
in on this occasion the switchman was walking on the
right hand side of the cars, and they were moving
about as fast as a man would ordinarily walk.   The
switchman testified that there was not anything to
indicate that men were working on any cars and that

he saw nothing to indicate their presence. There was also evidence for appellant that if any repairs were made on that track a flag was put up as a warning, and there was a red flag lying on a pile of ties by the side of the track, between the flat car and the switch. On the other hand, there was evidence that the end of the box car where Menary was at work was jacked up about a foot above its ordinary height, raising it about four feet from the ground, thus making it high enough so that the men putting in the coal cars ought to have seen it. Although the wire mill track was not a repair track, light repairs were occasionally made upon cars standing on it, so there was a possibility of men being at work on it. Upon substantially the same evidence, the Supreme Court said, on a former appeal of this cause, it would have been sufficient to require submission to a jury of the question, whether under the circumstances the manner in which the cars were put upon the track and pushed against the flat car was negligence if there had also been evidence fairly tending to prove that Menary was in the exercise of reasonable care and caution for his own safety. E. J. & E. Ry. Co. v. Herath, 230 Ill. 117.

On the question whether Menary was exercising the care and caution required of him, the evidence is practically the same as in the former record, although admitted on appellant's offer and through a different witness. The only witness who gave any direct testimony on that subject, on the trial after remandment of the cause, was Aaron Carlson, one of the two helpers who helped to strip and load the car. He testified that, when they had been working on the car about two hours, he heard Johnson say to Menary, "We want to have a flag over there," and that he heard Menary say, "We have only one flat car; we can watch when they switch in." It appears from the opinion in E. J. & E. Ry. Co. v. Herath, 230 Ill. 117, that on the former trial, Johnson testified that he, Johnson, said to Menary, "Tom, don't you suppose we ought to have a

flag?'' and Menary answered, ''No,'' that they could look out for themselves. The opinion also states that the account of the same conversation which Johnson said he gave to another person and which was not materially different, was that he said, ''Tom, don't you suppose we ought to put out some kind of a sign?'' and that Menary said he did not think it was necessary; that they had only that one car and they could look out for themselves. On this trial, Johnson was not examined in chief relative to this conversation with Menary, and on appellee's objection, appellant was not allowed to inquire about it on Johnson's cross-examination. To this ruling appellant excepted, and here urges it as erroneous for several reasons; principally, however, on the ground that the conversation between Menary and Johnson relative to the work upon which they were engaged, although occurring after they had been set to work and before Menary's death, was a part of the *res gestae* and therefore a proper topic of cross-examination. As before indicated, we do not deem it necessary to decide this question in arriving at our conclusion. The gang working under Menary's direction were sent to the car about 8 o'clock, and the accident occurred about 10. Nothing whatever was done by Menary, either to give notice that he and the other men were working on the car or to keep any watch or lookout for cars or engines. A red signal flag was lying on a pile of ties about two hundred and fifty feet distant from the box car, towards the switch. Menary's saying, ''We have only one flat car; we can watch when they switch in,'' showed that he knew the necessity of adopting some sort of precaution, while as a matter of fact he took no precautions whatever to protect himself. On the former trial there was no claim that Menary relied, or had a right to rely upon Emerson as a general foreman of the yards, either to put up a flag or signal or to do anything else to protect him; but from the evidence in this rec-

ord, counsel for appellee argues that Menary was in no sense a foreman and that his gang was taken from a track where no flag was necessary for safety, to a track where it was necessary to have out a flag, and that none of the men in the gang knew anything about putting out a flag at that time and had never been advised that it was necessary to put out a flag on any track, and had never worked upon tracks where a flag was necessary, before that morning; that Emerson, without any warning, took them over and directed them to work upon this car which was stationed behind several coal cars so that it was impossible for them, while working upon the box car, to see the car approaching from the main track, while Emerson knew the flag was lying on the pile of ties near the head of the switch and knew that these men knew nothing about the flag or that the flag was necessary, and went away knowing that trains were likely to be backed in on this track. These inferences are not fairly deducible from the evidence, and were evidently resorted to by counsel for the purpose of answering the suggestions on that topic appearing in the former opinion of the Supreme Court in this case. Menary was in a sense a foreman, and if he were in no sense a foreman, his duty was to use reasonable care and caution for his own safety would not be affected in any degree by that fact. Due care and caution on his part were indispensable to the right of appellee to recover against appellant for the injury, even if other servants of appellant were guilty of negligence. Elgin, Joliet and Eastern Railway Company v. Herath, 230 Ill. 117. There was no dispute in the evidence that Menary took no precaution whatever for his own safety, but went to work at the car without giving any attention to the surroundings or the dangers of his situation, and so continued in his disregard of such surroundings after Johnson had called his attention to the possible danger of his situation. There was no evidence whatever tending to prove the averment that Menary was in

the exercise of due care and caution for his own safety, but the evidence affirmatively established the want of any care and caution; and the court erred in refusing to give appellant's instruction directing the verdict of not guilty, at the close of all the evidence.

The judgment is reversed.

*Reversed.*

Finding of facts to be incorporated in the judgment: We find that the deceased, Thomas H. Menary, was guilty of negligence which contributed to the injury that caused his death.

MR. JUSTICE DIBELL having presided at the trial of this cause, took no part in its consideration here.